

**HINSHAW & CULBERTSON LLP**
**Attorneys at Law**
2525 Ponce de Leon Blvd.
Fourth Floor
Coral Gables, FL 33134

305-358-7747
305-577-1063 (fax)
**www.hinshawlaw.com**

Jorge Maza
jmaza@hinshawlaw.com

November 18, 2022

**Sent Via E-mail and Certified U.S. Mail**
**Return Receipt Request No.**
**7020 0090 0000 0391 0524**

Brandon Cathey, Esq.
Cathey & Miles
P.O. Box 2005
St. Petersburg, FL  33731
Brandon@catheymiles.com

Re:    *Lancia Isaac, as Personal Representative of the Estate of Brooklyn Blount v. Ewing's Love & Hope Preschool & Academy, Inc. and Darryl Ewing*, Duval County, Florida Cir. Ct., Case No. 16-2019-CA-005834
Policyholder: Ewing's Love & Hope Academy Inc
Policy No. CCP20035689-02 (eff. November 9, 2018 through May 6, 2019)
DOL: May 22, 2019
Claim No. CCCP20035U9818
Our Matter No. 1056314

CONFIDENTIAL SETTLEMENT COMMUNICATION

Dear Mr. Cathey:

We represent Markel Insurance Company ("MIC") in connection with the above-captioned matter. MIC is in receipt of your e-mail dated October 24, 2022, in which you demand that it pay $1 million to your trust account no later than November 19, 2022 in order to help satisfy a final judgment entered in the above-captioned matter against your clients, Ewing's Love & Hope Preschool & Academy, Inc. and Darryl Ewing (collectively, "Ewing"), for the sum of $21,607,500. For reasons set forth below, MIC respectfully rejects this demand.

MIC understands that the above-captioned action arose out of terrible incident occurring on May 22, 2019, when Mr. Darryl Ewing picked up Brooklyn Blount, transported her to Ewing's daycare facility, and failed to conduct a sweep/inspection of Ewing's van, leaving Brooklyn aboard the van. Several hours later, Ewing discovered that Brooklyn had been left in the van for over five hours. She was then transported to the hospital, where she was pronounced dead due to heat stroke.

As explained to Ewing on September 28, 2020, MIC determined that policy number CCP20035689-02 affords no coverage for the Estate of Brooklyn Blount's claims against Ewing for two reasons. First, the policy was cancelled effective May 6, 2019 at the request of Ewing's premium finance company and MIC never reinstated it. In other words, the incident occurred after

Brandon Cathey, Esq.
November 18, 2022

the policy was no longer in effect. As a result, the Estate's claims against Ewing did not fall within the relevant insuring agreement contained in the policy's commercial general liability coverage part, which applies only to "bodily injury" that occurs during the policy period.

Second, even if the policy was in effect at the time of the incident, the policy's commercial general liability coverage part contains an Aircraft, Auto Or Watercraft exclusion that precludes coverage for "bodily injury" that arises out of the "ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured." This incident unambiguously falls within the ambit of that exclusion. *See Bryant v. Windhaven Ins. Co.*, 173 So. 3d 1058 (Fla. 3d DCA 2015).

Despite the fact that the MIC policy plainly affords no coverage to Ewing for these claims, your recent e-mail contends that MIC should nevertheless pay $1 million to Ewing. In support of this contention, you state that (1) the cancellation of the Markel policy was "invalid" because it was based "solely on a communication from" Ewing's premium finance company and (2) the judgment against Ewing is covered under the MIC policy because it was for "'damages' because of injury arising out of a 'wrongful act' of the insured or of any other person for whose acts the insured is legally liable, to which this insurance applies." We address these two contentions in turn.

First, with respect to the cancellation of the policy, MIC properly cancelled the policy at the request of Ewing's premium finance company. Section 627.848(c), Florida Statutes, expressly provides that, upon an insurer's receipt of a notice of cancellation from a premium finance company, the policy "shall be cancelled . . . with the same force and effect as if the notice of cancellation had been submitted by the insured herself or himself."

Your second contention is that the judgment against Ewing is covered under the MIC policy because it was for "'damages' because of injury arising out of a 'wrongful act' of the insured or of any other person for whose acts the insured is legally liable, to which this insurance applies." This appears to be a reference to language contained in the insuring agreement for the policy's Professional Liability Coverage part (form MGL 1258 01 16). Respectfully, the judgment entered against Ewing does not fall within that insuring agreement for two reasons.

The insuring agreement in the policy's Professional Liability Coverage part applies only to "injury [that] occurs during the policy period." Here, the policy period was November 9, 2018 to May 6, 2019. Thus, claims arising out of the incident involving Brooklyn Blount, which occurred on May 22, 2020, do not fall within the Professional Liability Coverage part's insuring agreement.

Additionally, the Professional Liability Coverage part's insuring agreement applies to damages because of "injury arising out of a 'wrongful act'." The policy defines "wrongful act" as "any actual or alleged negligent act, error or omission in the rendering of or failure to render professional services to others arising out of your operations, including the furnishing of food, beverages, medications or appliances in connection with those operations."

Brandon Cathey, Esq.
November 18, 2022

Here, Ewing allegedly failed to sweep/inspect its van for children after arriving at Ewing's daycare facility. This alleged failure to act did not involve a professional service that requires the use of professional judgment or skill. Rather, this involved simple alleged negligence having nothing to do with any professional service. As a result, MIC determined that Ewing's allegedly wrongful conduct did not occur in the "rendering of or failure to render" any "professional services" and, thus, does not constitute a "wrongful act" as defined by the Professional Liability Coverage part. *See, e.g., Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, No. 19-22831-Civ-WILLIAMS/TORRES, 2020 U.S. Dist. LEXIS 79048 (S.D. Fla. May 4, 2020).

For the reasons stated herein, MIC reiterates that the policy affords no coverage for the Estate's claims against Ewing. This letter is intended to supplement, and is not in lieu of, MIC's September 28, 2020 letter to Ewing. Based on MIC's coverage determination, it must respectfully reject your demand that it pay $1 million to your client no later than November 19, 2022.

MIC recognizes that despite its reasonable investigation, it may not be aware of all the facts or documentation at your disposal. Accordingly, if you disagree with any of the facts stated herein or if you believe we are in need of additional facts, please provide the additional information or documentation to the undersigned and it will be duly considered.

Please contact our office with any questions or concerns.

    Respectfully,

    HINSHAW & CULBERTSON LLP

    *s/Jorge Maza*

    Jorge Maza
    jmaza@hinshawlaw.com